IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. JIMCY McGIRT, *Defendant*. | Case No. CR-20-050-JFH |

### GOVERNMENT'S BENCH BRIEF ON THE ADMISSIBILITY OF EVIDENCE OF OTHER CHILD MOLESTATION

COMES NOW, the United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Sarah McAmis, and pursuant to the Court's permission and direction at the Pretrial Conference on August 31, 2023, respectfully submits its Bench Brief on the Admissibility of Evidence of Other Child Molestation.

Before the Defendant's first federal jury trial in November 2020, the Government filed a Notice of Intent to Admit Evidence of Other Child Molestation. (Doc. 39). Based upon the record then before the Court, this Court entered an Order on October 28, 2020, precluding the Government from admitting the Defendant's prior convictions for child molestation. (Doc. 86). The Government filed a Supplemental Notice to Admit Evidence of Other Child Molestation on August 23, 2023. (Doc. 219).

During the Pretrial Conference on August 31, 2023, the Court granted the Government the opportunity to present additional authority supporting its request for the admission of the prior evidence of child molestation. This Court cautioned the undersigned that it wanted a "really pointed" bench brief that was "targeted to the issue." In making every effort to respect the Court's

1

request, the Government incorporates by reference the arguments and authorities as set forth in its previous pleadings. In addition, the Government submits the following Bench Brief.

## AUTHORITY

On April 21, 2021, which was after the Government's original Notice and the Court's original Order, the Tenth Circuit Court of Appeals issued its opinion in *United States v. Perrault*, 995 F.3d 748 (10th Cir. 2021). The facts and law as set forth in the *Perrault* opinion are highly instructive in the case at bar.

## DISCUSSION

Perrault was a Catholic Priest from the mid-1960's until 1992. *Id.* at 754. The defendant sexually abused 10-year-old John Doe 1 in 1990. *Id.* The defendant told Doe 1 that the abuse was their secret. *Id.* The defendant was not indicted until some twenty-five years later in 2017. *Id.* As a result, Doe 1 was a 35-year-old adult by the time of trial.

During the trial, in addition to the evidence surrounding the indicted counts with Doe 1 as the singular victim, the Government was allowed to introduce the testimony from seven other victims under the authority of Fed. R. Evid. 414. *Id.* Perrault was convicted and appealed. Perrault alleged that because the district court permitted the seven former victims to testify, his trial became a character assassination instead of a search for the truth. *Id.* However, the Tenth Circuit disagreed and found that Perrault "received a fundamentally fair trial in compliance with his constitutional rights." *Id.*

Doe 2 was a 12-year-old altar boy in 1983 when the defendant began taking him to dinner and giving him gifts. *Id.* at 758. When Doe 2 was 14-years-old, the defendant abused him at least three times in the rectory of the church and at the defendant's home. *Id.*

Doe 3 was a 12-year-old altar boy when he encountered the defendant in 1971. *Id.* at 757. The defendant abused Doe 3 only one time in the rectory of the church because Doe 3 managed to

escape. *Id.* Doe 3's father confronted the defendant. *Id.* The defendant said that he "was sorry" and later wrote Doe 3's mother a letter of apology. *Id.* In 2018, the defendant confessed to the FBI that he had "touched" Doe 3 and that he had written the letter of apology. *Id.* at 755.

Doe 4, as well as "dozens of additional victims," did not testify at trial. *Id.* at 780, ft. 1.

Does 5 and 6 are brothers. *Id.* at 758. They met the defendant around 1974 when Doe 5 was 10-years-old and Doe 6 was 11-years-old. *Id.* The brothers were both altar boys, their parents often invited the defendant into their home, and the defendant took them to the Kirtland Air Force Base. *Id.* The defendant brought gifts to the boys and their sister. *Id.* Each of the brothers were abused at their home and in their bedroom. Doe 5 estimated that the abuse happened at least 50 times. *Id.*

The defendant abused 13-year-old Doe 7 approximately 30 times. *Id.* The abuse occurred at the rectory and at the Base. *Id.*

In 1970 when Doe 8 was a 12-year-old altar boy, the defendant took him on excursions and gave him gifts. *Id.* at 757. The defendant first abused Doe 8 in a car and told the boy that it was their secret and to not tell anyone. *Id.* The defendant continued to abuse Doe 8 at least 100 times in his office and in a parking lot. *Id.* The defendant admitted to the FBI in 2018 that he had performed oral sex on Doe 8 and "may" have also used his hands. *Id.* at 755.

The defendant was Doe 9's teacher in 1996 when Doe 9 was 13 or 14-years-old. *Id.* at 757. The defendant took Doe 9 to the movies and gave him gifts. *Id.* The defendant abused Doe 9 while they were at the movies and gave him 50-100 inappropriate hugs which included the defendant rubbing Doe 9's crotch. *Id.* When Doe 9 was 17-years-old, the defendant let himself into Doe 9's home and bedroom to perpetrate abuse. *Id.* He told Doe 9 to keep the abuse between the two of them. *Id.*

## THE *PERRAULT* COURT'S ANALYSIS OF THE 414 EVIDENCE

The Tenth Circuit first recognized that Federal Rule of Evidence 414 is an exception to the general Rule 404(a) which precludes admission of evidence to show a defendant's propensity to commit bad acts. *Id.* at 765. The Court set forth that "Congress enacted these rules in part to address a frequent problem in sexual-assault cases – trials presenting he-said, she-said stalemates, what Congress described as 'unresolvable swearing matches.'" *Id.* When conducting the balancing test to determine whether the probative value of the proposed evidence is substantially outweighed by the danger of unfair prejudice, the Court recognized that:

> The starting point of that analysis is the proposition that evidence offered under Rule 413 [or 414] is not *unfairly* prejudicial simply because it is offered to show a propensity to commit sexual assault. While the evidence is prejudicial when offered for that purpose, that prejudice is not unfair since the rule makes the evidence admissible for that very purpose. *Id.* (internal citations omitted).

The Court further recognized that when evaluating the *Enjady* factors for admission of the evidence, the more seriously the material facts are disputed, the more heavily this factor weighs in favor of admissibility. *Id.* at 780, ft. 15.

The defendant argued that the 414 evidence that he gave the victims gifts and took them on excursions was not probative. *Id.* at 767. However, the Court recognized that 414 evidence can be admitted to show "a defendant's 'pattern of grooming'" and that gift-giving is a common grooming technique. *Id.* The Court considered that "grooming" is used by perpetrators in child sexual abuse cases to gradually involve the child. *Id.* at 780, ft. 16. The Court cited that "grooming" can include favors, praise, building a relationship with the child and sometimes the parents, and requests to keep the abuse secret. *Id.*

The defendant also argued that the 414 evidence was not probative because the testimony was too dissimilar because Doe 1 was prepubescent and Does 2, 7, and 9 were adolescents. *Id.* at 767. However, the Court found that the fact that three of the children were a few years older than

4

Doe 1 "doesn't mean the prior abuse isn't probative of Perrault's propensity to abuse young boys. Nor does our precedent establish such a rigid rule." *Id.* The Court specifically found that "the substantial, detailed Rule 414 evidence was highly probative of the material fact that it was admitted to prove – that Perrault had a propensity to sexually abuse boys." *Id.* at 768.

Next, the Court turned to the defendant's argument that the 414 evidence was more prejudicial than probative. *Id.* In response to the defendant's contention that the sheer number of Rule 414 witnesses unduly prejudiced the jury, the Court declined to set a maximum number of 414 witnesses that may be allowed. *Id.* at 769. The Court recognized that when the government seeks to introduce more than four 414 witnesses at trial, the district court may need to consider the proffered testimony individually when considered with the other testimony already permitted. *Id.* However, the Court specifically found that the fact that there are multiple 414 witnesses does not render the testimony cumulative because:

> Juries may find one Rule 414 witness's testimony credible, while dismissing the next. For that reason, the government may need multiple Rule 414 witnesses to effectively bolster the credibility of the victim tied to the indictment, particularly where the government's case would otherwise rely on that victim's testimony alone. And we have repeatedly affirmed that, consistent with Congress's intent in enacting Rule 413 and 414, 'courts are to liberally admit evidence of prior uncharged sex offenses.' *Id.*

In reviewing the specific testimony presented from the seven 414 witnesses, the Court found that none of the witnesses merely parroted identical accusations. *Id.* at 769. The Court recognized that with respect to Doe 1, the government did not have any physical evidence to support Doe 1's years-old claims of sexual abuse and; therefore, the testimony of the 414 victims bolstered Doe 1's credibility and thus reduced "the likelihood that the trial would reduce to an 'unresolvable swearing match.'" *Id.*

The Court found that the testimony of Does 3 and 8 was "especially probative and important to the government's case because the government introduced Perrault's own admissions

that he had abused those witnesses," and the testimony of Does 5, 6, and 9 "collectively helped establish Perrault's pattern of gift-giving and grooming methods." *Id.* at 769-770. The Court also recognized that one of Perrault's defenses to Doe 1's case was that Doe 1 had a financial incentive to fabricate his allegations. *Id.* at 770. As a result, Doe 2's testimony was specifically relevant to refute Perrault's defense. *Id.* The court then found that "because we conclude that each of the Rule 414 witnesses retained independent probative value, we reject Perrault's argument that their testimony amounted to 'needless…cumulative evidence.'"

Finally, the Court considered the defendant's assertions on appeal that the "government convinced the jury that he was a monster and that it convicted him for that reason" and that the Rule 414 witness testimony was unfairly prejudicial because "it led the jury to convict him based on the emotional impact of those witnesses' testimony, rather than because he had sexually abused Doe 1." *Id.* Contrary to the defendant's argument, the Court found that:

> [A]lthough Rule 414 witnesses undoubtedly produce a powerful emotional impact on jurors, that alone isn't sufficient to justify excluding their testimony. Indeed, if we accepted Perrault's argument, courts could rarely, if ever, admit Rule 414 witnesses for fear of the emotional impact their testimony would have on the jury. *Id.*

The Court also recognized that any potential jury bias can be mitigated by giving limiting instructions. *Id.*

### ***PERRAULT'S*** **APPLICABILITY TO THE CASE AT BAR**

As in *Perrault*, the abuse in the case at bar occurred decades earlier, there is no physical evidence of the abuse, and the defense's argument is that the allegations of abuse were fabricated. As such, the trial is essentially a "he-said, she-said stalemate" and an "unresolvable swearing match." Notably, the indictment in *Perrault* alleged a sole victim; likewise, the indictment in the instant case has a single victim. This is significant. The Tenth Circuit recognized that where there is a sole victim, Fed. R. Evid. 414 witnesses "effectively bolster the credibility of the victim tied

to the indictment, particularly where the government's case would otherwise rely on that victim's testimony alone." *Perrault* at 769. Because the material facts before this Court are completely in dispute and the sole victim's credibility is subject to attack, the Government submits these circumstances weigh heavily in favor of admitting the 414 evidence.

Similar to the facts in *Perrault*, the Government's proposed 414 evidence herein involves somewhat different prohibited sexual acts perpetrated under somewhat different circumstances. However, the Government has outlined new facts to the Court that demonstrate the significance of the Defendant's patterns, the significance of the Defendant's grooming behavior, and the manner in which the acts of abuse are in fact sufficiently similar. Pursuant to the Court's findings in *Perrault*, the somewhat nuanced circumstances do not mean that the prior abuse is not probative of the Defendant's propensity to abuse young children, nor should this Court be held to such a rigid rule. Furthermore, as in *Perrault*, this Court should not look at the proposed 414 evidence in isolation, but as the totality of circumstances before, during, and after the Defendant's abusive acts.

In contrast to the seven 414 witnesses in the *Perrault* case, the Government herein only seeks to admit evidence regarding two 414 witnesses. When evaluating and allowing the testimony of each of the seven witnesses in *Perrault*, the Court found the testimony of two particular 414 witnesses was especially probative and important to the government because the Defendant admitted to abusing the two witnesses. Similarly, the Defendant in the case at bar confessed to abusing both of the proposed 414 witnesses which is highly probative to the Defendant's argument that the victim in the charged conduct fabricated her allegations.

In the case at bar, the defense argued at the Pretrial Conference that if the Government's 414 evidence was admitted, "there will be no fair trial" and "it will be the end of it." However, as in *Perrault*, although the proposed 414 evidence may produce an emotional impact, that fact does

not justify excluding the testimony. If this Court accepted the Defendant's argument, Rule 414 could rarely, if ever, be admissible. The "starting point" of the 414 analysis assumes the proposed evidence is prejudicial. However, the evidence is not *unfairly* prejudicial when it is offered within the purpose of the rule: to show propensity.

## CONCLUSION

As set forth above, the Government submits this Bench Brief as additional authority for the Court to admit its proffered evidence of other molestation perpetrated by the Defendant.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/    Sarah McAmis
SARAH McAMIS, OBA # 15903
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
sarah.mcamis@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard O'Carroll, Counsel for Defendant
Julia D. Allen, Counsel for Defendant

s/    Sarah McAmis
SARAH McAMIS
Assistant United States Attorney