IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | Case No. 20-CR-050-JFH |
| **JIMCY MCGIRT,** | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court are various filings by the parties regarding the December 11, 2023 trial including: (1) Defendant's Responses and Objections to the Government's Notice of Intent to Offer Expert Testimony [Dkt. No. 224; Dkt. No. 235; Dkt. No. 251]; (2) Defendant's Omnibus Motion in Limine [Dkt. No. 250]; and (3) the Government's Objection to Defendant's Notice of Intent to Offer Expert Testimony [Dkt. No. 249]. The Court will address the parties' filings in turn.

## BACKGROUND

Defendant is charged with two (2) counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), and 2246(2)(B & C) and one (1) count of abusive sexual contact, in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), 2244(a)(5), and 2246(3). Dkt. No. 32. The alleged victim in this case is B.B. [Dkt. No. 32], who was Defendant's step-granddaughter. She was four years old at the time the charged conduct occurred. Dkt. No. 198 at 45-47. The indictment alleges that on or about August 8, 1996, continuing until on or about August 15, 1996, Defendant penetrated B.B.'s vagina with his finger, touched her vagina with his mouth, and caused her to touch his penis. *Id.* Following a trial in November 2020, a jury found Defendant guilty on all three counts charged in the indictment. Dkt. No. 111. Defendant appealed, and the Tenth

Circuit Court of Appeals reversed the verdict based on a jury instruction issue. Dkt. No. 208. A retrial was initially set for September 11, 2023 [Dkt. No. 232] and subsequently continued to December 11, 2023 [Dkt. No. 462].

## AUTHORITY AND ANALYSIS

### I. Defendant's Objection to the Government's Expert Notice

On August 28, 2023, the Government filed a Notice of Intent to Offer Expert Witness, indicating that it intends to call two expert witnesses at trial: (1) Andrea Hamilton, MSW, to testify regarding disclosures of child sexual abuse; and (2) Dr. Michael Baxter, to testify child sexual abuse and child sexual abuse examinations. Dkt. No. 220. Defendant filed a response, raising three issues regarding the Government's proffered expert witness testimony: (1) Defendant requested a hearing on the admissibility of the testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); (2) Defendant sought exclusion of the proffered testimony under Federal Rule of Evidence 403, arguing that its probative value was significantly outweighed by the danger of unfair prejudice; and (3) Defendant argued that the timing of the Government's Notice was prejudicial because he did not have the time or resources to obtain a rebuttal expert. Dkt. No. 224 at 3-6.

#### A. Defendant's Request for a *Daubert* Hearing

The request for a *Daubert* hearing included in Defendant's initial response to the Government's notice is made in general terms. *Id.* at 6. Without argument or explanation, Defendant states that he is requesting a hearing to determine: "(1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has 'general acceptance.'" *Id.* (citing *Bitler v. A.O. Smith*

*Corp,.* 400 F.3d 1227, 1233 (10th Cir. 2005)). The Court recognizes these factors as part of a non-exhaustive list, set forth by the Tenth Circuit Court of Appeals in *Bitler*, to be considered in determining the reliability of an expert's proffered testimony. However, because Defendant only cited the list of factors without identifying any specific reliability concerns with respect to the Government's proffered expert witnesses, the Court sought clarification regarding the basis for Defendant's hearing request at the August 31, 2023 pretrial conference.

At the conference, in response to the Court's inquiry, Defendant's counsel was unable to articulate any specific *Daubert* concerns. The Court directed Defendant's counsel to confer with counsel for the Government and identify any issues Defendant might have with the Government's Notice. The Court advised Defendant's counsel that if, after conferring, he still felt a *Daubert* hearing was necessary, he should file supplemental briefing detailing the reason(s) why. Defendant subsequently filed a supplemental response to the Government's notice, reiterating—verbatim—his original request for a *Daubert* hearing. Dkt. No. 235 at 3-4. As with his first request, Defendant did not identify specific *Daubert* concerns, nor did he provide any explanation as to why a hearing should be conducted. *Id.*

"Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it." *Ellis v. Hobbs Police Dep't*, 472 F. Supp. 3d 1087, 1093 (D.N.M. 2020) (collecting cases). Phrased differently, the district court must only "reply in some meaningful way to the *Daubert* concerns *the objector has raised*." *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1190 (10th Cir. 2014) (emphasis added); *see id.* (explaining a district court should "focus its attention on the specific factors implicated by the circumstances at hand"); *see also United States v. Stevenson*, Case No. CR-21-275-RAW, 2022 WL 4368466, at *1 n.2 (E.D. Okla. Sept. 21, 2022) (recognizing that where a party makes only a

general or conclusory *Daubert* challenge, the district court cannot properly exercise its discretion in determining whether a hearing should be held). Here, Defendant has made repeated conclusory requests for a *Daubert* hearing. However, he has not articulated the basis for his request and has not raised specific *Daubert* concerns, despite having had multiple opportunities to do so. Accordingly, the Court concludes that a *Daubert* hearing is not warranted. Defendant's request for a hearing is denied.

### B. Defendant's Rule 403 Challenge to the Government's Proffered Expert Testimony

In his initial response to the Government's notice, Defendant sought the exclusion of the Government's proffered expert witnesses under Federal Rule of Evidence 403, arguing that the testimony: (1) had no probative value, because the witnesses are not familiar with the facts of this case; and (2) could only be offered for the improper purpose of bolstering B.B's credibility. Dkt. No. 224 at 4-6.

Under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is relevant if: (1) "it has a tendency to make a fact more or less probable than it would be without the evidence;" and (2) "the fact is one of consequence in determining the action." Fed. R. Evid. 401. In determining whether to exclude evidence under Rule 403, the trial court must weigh its probative value against the risk that the evidence will be unfairly prejudicial. *See United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989). "[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010). The decision to admit or exclude evidence pursuant to rule 403 is

within the trial court's discretion. *See United States v. Lugo*, 170 F.3d 996, 1005 (10th Cir. 1999); *see United States v. Abel*, 469 U.S. 45, 54 (1984) ("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403").

During the August 31, 2023 pretrial conference, the Court heard argument from the parties regarding Defendant's Rule 403 objection. Defendant's counsel argued that the Government's proffered expert witness testimony would constitute bolstering of B.B, in that the subject matter of the testimony would create sympathy and sentiment on the part of the jury, resulting in the danger of unfair prejudice against Defendant. Counsel for the Government explained that the testimony was not being offered to bolster the credibility of any Government witness. Counsel acknowledged that to offer expert testimony to bolster the credibility of witnesses would be improper and would invade the province of the jury. According to the Government, neither of its proffered experts are familiar with this case and neither will offer testimony specific to the facts of the case. Instead, Andrea Hamilton, LSW, will testify generally the disclosure of sexual abuse by child victims. Dr. Michael Baxter will testify generally about sexual abuse examinations and the types of injuries to the female genitalia that may or may not be evident in a such examinations. Counsel for the Government explained that each expert's testimony will be offered to help the jurors understand issues that are outside their "normal realm of understanding." Counsel for the Government confirmed that neither expert will be asked to opine regarding: (1) B.B.'s disclosure or examination; (2) her truthfulness or believability; or (3) whether the abuse alleged in this case occurred. Counsel for the Government also confirmed that Dr. Baxter's testimony would not overlap with that of Dr. Douglas Stewart, who examined B.B. after the alleged abuse occurred, and who will testify as a fact witness for the Government.

Considering the averments of counsel, the Court found that the testimony of Ms. Hamilton and Dr. Baxter to be relevant and to have probative value not outweighed by the risk of unfair prejudice, particularly because neither expert will testify regarding the specific facts or allegations in this case. Accordingly, the Court determined that Ms. Hamilton and Dr. Baxter would be permitted to testify consistent with the Government's notice.

In his supplemental response to the Government's notice, Defendant again raised Rule 403, arguing that the testimony of Ms. Hamilton and Dr. Baxter holds nominal probative value and presents a risk of unfair prejudice to Defendant because it will contaminate the jury with societal alarm and place images of "thousands of children victims" in the jurors' minds. Dkt. No. 235 at 3. Defendant also argues that Dr. Baxter's testimony will be "redundant" to that of Dr. Stewart, who examined B.B., and is offered as a fact witness. The Court disagrees.

As discussed at the August 31, 2023 pretrial conference, the Government will not illicit duplicative testimony from Dr. Baxter, who will testify generally regarding sexual abuse examinations and the findings that may result from such examinations, and Dr. Stewart, who will testify about his experience and knowledge specific to B.B. and the facts of this case. Regarding Defendant's Rule 403 argument, there is no indication that the testimony of Ms. Hamilton and Dr. Baxter will create "societal alarm" by discussing "thousands" of child sexual abuse victims. However, if specific testimony offered at trial implicates this concern, Defendant may raise his objection again at that time. The Court affirms its prior ruling that the testimony of Ms. Hamilton and Dr. Baxter, as set forth in the Government's notice, is relevant, will assist the jury in understanding issues surrounding child sexual abuse that will be presented in this case, and does not present a risk of unfair prejudice.

### C. Defendant's Request for Time and Resources to Obtain Rebuttal Expert

Since Defendant's initial objections to the Government's notice were filed, the trial was continued to December 11, 2023, and Defendant filed his own notice of intent to offer expert witness testimony. Dkt. No. 248. Thus, the Court finds that Defendant's objection, that he had neither resources nor time to obtain a rebuttal expert, has been resolved.

### II.   Defendant's Omnibus Motion in Limine

"A creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence, the motion in limine gives the court the opportunity to take up before trial those certain and limited evidentiary issues in order to minimize interruptions at trial." *Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1179 (D. Kan. 1997). "The propriety of entering an order in limine depends on the particular situation." *Id.* Some admission decisions are "fact-bound determinations dependent upon the character of the evidence introduced at trial." *United States v. Mejia-Alarcon*, 995 F.2d 982, 987 (10th Cir. 1993). Where "the admissibility of certain evidence turns upon what facts are developed at trial, it is the better practice to wait until trial to decide the objections." *Deghand*, 980 F. Supp. at 1179–80; *see Coleman v. State Farm Fire & Cas., Co.*, No. 21-CV-0430-CVE-JFJ, 2023 WL 1965673, at *1 (N.D. Okla. Feb. 13, 2023) (recognizing that "a court is almost always better situated to make evidentiary rulings during trial"). Thus, trial courts "may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds." *Coleman*, No. 21-CV-0430-CVE-JFJ, 2023 WL 1965673, at *1.

Here, Defendant's omnibus motion in limine seeks pretrial rulings on fourteen (14) issues: (1) the admissibility of testimony regarding an audio recording of B.B. purportedly disclosing sexual abuse by Defendant; (2) the admissibility of testimony regarding a law enforcement

7

officer's reaction to hearing the recorded disclosure; (3) the admissibility of testimony regarding a letter written by Defendant in which he purportedly confessed to sexually abusing B.B.; (4) the propriety of hypothetical questions by counsel for the Government pertaining to the audio recording and the letter; (5) the admissibility of testimony regarding the potential theft of the letter by a relative; (6) the admissibility of testimony that "quantifies" Defendant's guilt; (7) the admissibility of testimony regarding "grooming;" (8) the propriety of "name calling" by counsel for the Government; (9) reference to B.B. as the "victim;" (10) the admissibility of testimony regarding possible reasons a forensic interview was not performed; (11) the admissibility of photographs of B.B taken near the time of the alleged abuse; (12) the admissibility of lay testimony regarding changes in B.B.'s behavior as attributable to the alleged abuse; (13) the admissibility of testimony that no physical trauma is "normal" in sexual abuse cases; and (14) the propriety of leading questions by counsel for the Government. Dkt. No. 250.

   a. **Rulings Reserved for Trial**

With regard to issues: (1) the admissibility of testimony regarding an audio recording of B.B. purportedly disclosing sexual abuse by Defendant; (2) the admissibility of testimony regarding a law enforcement officer's reaction to hearing the recorded disclosure; (4) the propriety of hypothetical questions by counsel for the Government pertaining to the audio recording and the letter; (5) the admissibility of testimony regarding the potential theft of the letter by a relative; (6) the admissibility of testimony that "quantifies" Defendant's guilt; (7) the admissibility of testimony regarding "grooming;" and (10) the admissibility of testimony regarding possible reasons a forensic interview was not performed, the Court cannot conclude that the testimony is inadmissible on all potential grounds. *Coleman*, No. 21-CV-0430-CVE-JFJ, 2023 WL 1965673, at *1.

Defendant's objections regarding these categories of testimony are based on the context and facts developed during the 2020 trial. Dkt. No. 250 at 1-8. While there may be a significant amount of overlap between the testimony presented during the 2020 trial and that presented at the upcoming trial, the Court cannot speculate as to the precise contours of that overlap. Nor can it make admissibility rulings for the upcoming trial based on facts developed at the 2020 trial. Because the admissibility of the testimony identified in issues: (1); (2); (4); (6); (6); (7); and (10) will turn on the facts developed during the upcoming trial, the Court will reserve its ruling on these issues. Defendant's motion in limine as to issues: (1); (2); (4); (6); (6); (7); and (10) is denied as premature.

   b. **Testimony Regarding the Confession Letter**

Before the 2020 trial, Defendant moved to exclude testimony regarding a letter to Norma Blackburn, Defendant's former wife and B.B.'s grandmother, in which he wrote (referring to the alleged abuse of B.B.), that "the devil made him do it." Dkt. No. 25; Dkt. No. 72. The Court held an evidentiary hearing and entered an Order addressing the issues raised by Defendant, including whether admission of the testimony was precluded by the best evidence rule or the rule against hearsay, and whether the testimony was unfairly prejudicial. Dkt No. 85. The Court determined that the testimony was admissible and denied Defendant's motions to exclude it. *Id.*

In the instant motion, Defendant briefly addresses the letter stating, "There is much made of an allegedly 'stolen' letter that contains a confession from the Defendant that 'Devil made me do it.' No other context or specifics are provided by the Government's witnesses and now the letter is missing, and the Government alleges it was 'stolen.'" Dkt. No. 250 at 3. Defendant makes no specific argument or request to exclude testimony regarding the letter. *Id.* However, to the extent that Defendant is arguing that such testimony should be excluded at trial, the Court finds

that the brief statement by Defendant in his motion does not provide any basis for revisiting the Court's prior ruling. Defendant's motion in limine on this issue is denied.

### c. Use of the Term "Victim"

Defendant seeks to preclude the Government from using the term "victim" at trial. Dkt. No. 250 at 7. Defendant offers no legal or factual support for his position. *Id.* The Government objects, arguing that the Crime Victim's Rights Act ("CVRA") "enumerates specific rights to all crime victims throughout a criminal case including pretrial, trial, and post-trial," and does not use the term "alleged victim" even in contemplation of pre-adjudication proceedings. Dkt. No. 252 at 9-10 (citing 18 U.S.C. § 3771(a) and (b)). The Government contends that the sparing use of the term during examination or closing argument would not amount to a violation of Defendant's constitutional rights. *Id.* at 10.

Neither party cites to, and the Court has not found binding authority on this issue. However, the Court is aware of non-binding decisions in which courts have recognized that the repeated use of the term "victim" may be prejudicial. *United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *1 (D.N.M. Sept. 9, 2021) (recognizing that the term "victim" "is prejudicial when the core issue at trial is whether a crime has been committed—and, therefore, whether there is a victim."); (*Connecticut v. Cortes*, 851 A.2d 1230, 1239-40 (Conn. App. Ct. 2004), aff'd, 885 A.2d 153 (Conn. 2005) (holding that jury charges using the term "victim" instead of "alleged victim" violated a defendant's due process right to a fair trial); *Talkington v. Texas*, 682 S.W.2d 674, 674 (Tex. App. 1984) (holding that the use of the term "victim" in court's rape charge was reversible error when the issue at trial was whether complainant consented to sexual intercourse); *People v. Davis*, 423 N.Y.S.2d 229, 230 (N.Y. App. Div. 1979) ("By referring in its charge to the complainant as the 'victim' and to the defendant as the 'perpetrator', the court impermissibly

insinuated to the jury that the complainant was the victim of injuries resulting from acts committed by the defendant.")). Other courts have acknowledged that use of the term "victim" holds limited probative value. *See United States v. Garcia-Limon*, No. CR 21-0032 RB, 2022 WL 3334498, at *1 (E.D. Okla. May 16, 2022) ("Moreover, there is virtually no probative value in allowing the government to use the term 'victim' to describe [the individual]." (citing *Sena*, No. 19-CR-01432, 2021 WL 4129247, at *2.)); *see also United States v. Ehrens*, No. CR-15-200-C, 2015 WL 7758544, at *2 (W.D. Okla. Dec. 1, 2015) (finding that there was "no need by any party to refer to [the alleged victim] by any particular descriptor other than her name")).

Having considered these authorities, the Court concludes that there is no reason in this case to the use of the term "victim" through the presentation of evidence phase of this case. However, because in closing, the Government may argue that it has met its burden to establish Defendant's guilt, it would not be unfairly prejudicial to allow the Government to follow this argument to its logical conclusion by referring to B.B. a victim. Accordingly, the Government may use the term "victim" in closing argument only. The Court will direct the Government and its witnesses to otherwise refrain from using the term. *See Garcia-Limon*, No. CR 21-0032 RB, 2022 WL 3334498, at *2; *United States v. Pena*, No. 20-CR-01903 MV, 2022 WL 1102456, at *3. As explained above, Defendant's motion in limine on this issue is granted in part and denied in part.

d. **Photographs of B.B. Near the Time of the Alleged Abuse**

Defendant seeks to exclude photographs of B.B. on her fourth birthday disclosed in discovery, along with a text message from B.B., stating, "This is when it happened." Dkt. No. 250 at 7. Defendant argues that the photographs, which depict B.B. at or around the time of the alleged abuse, are not probative of a fact at issue, and are prejudicial, intended only to inflame the jury. *Id.* The Government argues that because B.B. will testify as an adult, the photographs, which

depict her as she appeared at the time of the alleged abuse, should be permitted for "the jury's consideration of the totality of the evidence." Dkt. No. 252 at 10-11. Because the photographs at issue are not in the record before the Court, the Court cannot make a determination as to their probative value or possible prejudicial impact. The parties may provide copies of the photographs and make any additional arguments regarding their admissibility at the pretrial conference set for November 16, 2023. The Court reserves ruling on the photographs' admissibility until it has had the opportunity to review them.

### e. Lay Testimony Regarding Changes in B.B.'s Behavior

Defendant seeks to exclude testimony by B.B.'s relatives that changes in B.B.'s behavior after the alleged abuse occurred, were caused by the alleged abuse. Dkt. No. 250 at 8-9. The Government argues such testimony is probative because "[w]hen a victim is questioned about her ability to recall details, whether or not she really experienced sexual abuse, or is otherwise accused of making up the abuse, the impact or ongoing consequences from which she still suffers can corroborate her experience." Dkt. No. 252 at 11.

The Court agrees that such evidence has probative value. However, under Federal Rule of Evidence 701, lay witness testimony in the form of an opinion may be is admissible only where the opinion is: (1) "rationally based on the witness's perception;" (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue;" and (3) not based on scientific, technical, or other specialized knowledge within the scope of [Rule] 702]."

Defendant's motion in limine on this issue is granted in part and denied in part. A lay witness who observed changes in B.B.'s behavior after the alleged abuse occurred may offer testimony regarding those observations and any correlation to the timing of the alleged abuse. However, a lay witness, who is not offered as an expert in psychology or behavioral science, may not testify as to whether the alleged abuse caused the changes in B.B.'s behavior, since such testimony would have to

be based on scientific, technical, or specialized knowledge.  *See* Fed. R. Evid. 701; Fed. R. Evid. 702 (providing in pertinent part that a witness who is "qualified by knowledge, skill, experience, training, or education, may testify in the form of an opinion" if the proponent of the testimony demonstrates "that the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue"); *White v. Walker*, 950 F.2d 972, 979 (5th Cir. 1991) (holding that opinion testimony by a lay witness was properly excluded where the opinions required knowledge of child psychology).

f. **Expert Testimony Regarding "Normal" Findings in Sexual Abuse Examinations**

Although Defendant's argument on this point is not entirely clear, Defendant appears to be seeking the exclusion of testimony by Dr. Baxter, the Government's expert in child sexual abuse examinations, that it is normal not to find physical trauma after a child has been sexually abused. Dkt. No. 250 at 9.  The Court understands Defendant to be arguing that such testimony is not probative of a fact at issue.  As the Court found at the initial pretrial conference, Dr. Baxter's testimony regarding child sexual abuse examinations and the types of injuries to the female genitalia that may or may not be observed in a such examinations is probative.  Such testimony will help the jury understand child sexual abuse examinations generally and provide context for any testimony regarding the examination performed on B.B. relative to the abuse alleged in this case.  Defendant's motion in limine on this issue is denied.

g. **Conduct of Counsel**

Defendant raises two issues regarding the conduct of counsel for the Government.  Dkt. No. 250 at 6, 9-10.  Specifically, Defendant seeks to prohibit counsel from calling Defendant names and asking leading questions.  *Id.*  Presumably, *all* counsel appearing in this case will endeavor to maintain appropriate courtroom decorum and to comply withs the applicable

13

procedural and evidentiary rules.[1]  At this stage, it is not necessary to order counsel to do so. Defendant's motion in limine on this issue is denied.

### III.     The Government's Objection to Defendant's Expert Notice

In his Notice of Expert Testimony, Defendant indicates that he intends to call Alissa Sherry, Ph.D., ABPP, a Board-Certified Forensic Psychologist to testify regarding:  (1)  the "suggestibility of children;" (2) the "nature and effect of police interrogation tactics of child and adult witnesses regarding allegations of sexual abuse;" (3) the "proper interview procedures of a child and importance of forensic interview;" (4) the "nature and effect of cognitive bias and discrimination for child and adult witnesses;" (5) the "motivations for false allegations and alienation among family members;" (6) the "objective characteristics of a three or four year old and ability to recall;" and (7) her "review of statements and reports."  Dkt. No, 248 at 1-2. Defendant also indicates that Dr. Sherry "can testify in support of *Daubert* challenges to Plaintiff's expert witnesses."  *Id.* at 2.

In its response, the Government states that, assuming Dr. Sherry "has the proper background, training, and experience to offer her expert opinions on these subjects, and assuming that she will offer her expert opinions in general terms and not as specifically applied to the case at bar," the Government has no objection to her testifying about the first six (6) subjects identified in Defendant's notice.  Dkt. No. 249 at 1.

It is not clear what Defendant intends by proffering testimony regarding Dr. Sherry's "review of statements and reports."  However, as the Government points out, it would be improper

---

[1]  *See* https://www.oked.uscourts.gov/sites/oked/files/OKED%20Chambers%20Rules.pdf, Judge Heil Chambers Rule 8(d) ("The parties are discouraged from filing a motion in limine requesting an order that the parties be required to follow the Federal Rules of Evidence.  Any motion in limine filed should concern specific evidence.").

for Dr. Sherry to offer opinions regarding the specifics of this case, including opinions regarding the credibility of any witnesses, the veracity of any allegations, or whether the sexual abuse alleged in this case occurred. *See Hellums v. Williams*, 16 F. App'x 905, 910 (10th Cir. 2001) (recognizing that expert witnesses, may not "comment on the alleged victim's credibility" because such comments "exceed the scope of the expert's specialized knowledge and merely inform the jury that it should reach a particular conclusion rather than allowing the jury to decide the ultimate issue of sexual abuse," and holding that expert testimony "that sexual abuse in fact occurred is inadmissible.") (citation omitted)).  The Government's objection as to this issue is sustained.  To the extent Defendant seeks to illicit testimony from Dr. Sherry regarding the facts or allegations of this case, such testimony will not be permitted.

## CONCLUSION

IT IS THEREFORE ORDERED that:

1. Defendant's Responses and Objections to the Government's Notice of Intent to Offer Expert Testimony [Dkt. No. 224; Dkt. No. 235; Dkt. No. 251] are OVERRULED.

2. Defendant's Omnibus Motion in Limine [Dkt. No. 250] is GRANTED in part and DENIED in part as set forth in this Order.

3. The Government's Objection to Defendant's Notice of Intent to Offer Expert Testimony [Dkt. No. 249] is SUSTAINED.

Dated this 15th day of November 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE