IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 20-CR-50-JFH |
| JIMCY MCGIRT, | |
| Defendant. | |

## OPINION AND ORDER

"I know how to plead guilty when I'm guilty." Defendant Jimcy McGirt ("Defendant" or "McGirt") told the Court this at his federal sentencing hearing. Dkt. No. 195 at 42:12-13. He said other things during the same hearing.

For instance, he admitted to previously forcibly orally sodomizing both a five-year-old boy and an eight-year-old boy—even though the Court excluded evidence of that abuse from trial. *See* Dkt. No. 86. He told the Court, "[I pled] guilty to abusing those two boys. I did. And I [went] on ahead and let that be my lesson." Dkt. No. 195 at 42:15-17.[1]

At the same time, he adamantly denied the conduct he was about to be sentenced for: digitally penetrating a four-year-old girl who saw him as a grandfather figure, sodomizing her, and making her touch his penis, all for his own sexual gratification. *See* Dkt. No. 12; Dkt. No. 32.

---

[1] In those guilty pleas, Defendant swore that:

> Count 1: [D.G.] asked me for some more money, I gave him some the day before to do some work, I told him I would give him the money if he would allow me to put his penis in my mouth. I did this to [sic] 8 year old.
>
> Count 2: [A.G.] came to me wanting money too. The next day I told him I would give him the money to let me put his penis in my mouth. I did this to the 5 year old.

Dkt. No. 86 at 3.

Awaiting sentencing after a multiday trial where he was convicted of all three counts, Defendant informed the Court that "I told them, I can't plead guilty to something I didn't do. I know how to plead guilty." Dkt. No. 195 at 45:13-15. According to him, if he "was guilty, all the things that I've heard in this courtroom [during trial], I'd hate that man myself. I would." *Id.* at 42:8-10. "I mean, if I had really done that, if I had really done, I'd hate myself." *Id.* at 44:16-18. "But like I say, if I was guilty, I know how to plead guilty." *Id.* at 45:7-8.

Then McGirt pled guilty.

On December 5, 2023—more than two years after he told the Court at sentencing on August 25, 2021 that he knows how to plead guilty when he's guilty—Defendant signed a statement under penalty of perjury that:

> Beginning on or about August 8, 1996 and continuing until on or about August 15, 1996, I, Jimcy McGirt, did knowingly engage and attempt to engage in the following sexual act and contact with B.B., a person who had not attained the age of 12 years: contact between the mouth of the defendant and the vulva of B.B. with an intent to arouse or gratify the sexual desire of any person.

Dkt. No. 267 at 2. And he testified under oath to a United States Magistrate Judge that he "placed [his] mouth on [B.B.'s] vagina." Dkt. No. 290 at 26. What had changed?

McGirt got a plea deal. In exchange for his pleading guilty to one count, the Government agreed to request dismissal of the other two counts. Dkt. No. 267 at 2. Additionally, as part of the deal, the parties stipulated to a 30-year term of imprisonment. *Id.* at 8. McGirt anticipates the deal will effectively result in a time-served sentence. Dkt. No. 269 at 2 (noting Defendant relied upon advice from his attorney that according to Bureau of Prisons, the plea agreement allowed for credit for time served and, that based upon counsel's research and opinion, McGirt had already discharged 30 years); Dkt. No. 290 at 21-22 (noting defense counsel represented to McGirt that he would get credit for time served and that was the reason he was pleading guilty).

With the possibility—though not the certainty[2]—of a time-served sentence in mind, Defendant moved for expedited sentencing. Dkt. No. 273. The Court denied this request, explaining the Court's current criminal caseload caused "the current average time between a change of plea and sentencing in this District [to be] longer than anyone—litigants, attorneys, or the Court—would prefer" and "Defendant [had] not shown that he [was] entitled to be treated differently than the other defendants on the Court's overburdened sentencing docket." Dkt. No. 278 at 2. Nonetheless, the Court noted, it would "make effort to set sentencing as soon as practical given its docket" [*id.*] and set sentencing for March 15, 2024 [Dkt. No. 279].

The week before Defendant was to be sentenced, he filed a notice of forthcoming motion stating he planned to challenge the Court's subject matter jurisdiction to sentence him for the act he pled guilty to committing. Dkt. No. 285. This Motion followed. Since the Court would have no sentencing power if it lacked jurisdiction, it struck the sentencing hearing to resolve the Motion.

But this all gets ahead of our story.

## BACKGROUND

**The State Prosecution and The Supreme Court Decision**

In 1997, McGirt was convicted in Oklahoma state court of first-degree rape by instrumentation, lewd molestation, and forcible sodomy after two previous convictions. *State v. McGirt*, Case No. CF-1996-355 (Wagoner Cty. Dist. Ct. June 24, 1997) ("*McGirt I*"). The victim of the three crimes was his wife's granddaughter, who turned four years old during the week that McGirt sexually violated her. The state court jury recommended, and the trial court imposed, sentences of 500 years imprisonment on each of the first two charges, and life without the

---

[2] As the Court has previously noted, despite Defendant's statements to the contrary [Dkt. No. 273 at 1; Dkt. No. 275 at 1], the Court has not yet approved or accepted the plea agreement, as the appropriate time for the Court to do so is *at* sentencing.

3

possibility of parole on the third, to be served consecutively. *Id.* The Oklahoma Court of Criminal Appeals affirmed his conviction. *McGirt v. State*, Case No. F-1997-967 (Okla. Ct. Crim. App. Aug. 26, 1998) ("*McGirt II*").

McGirt appealed to the Supreme Court of the United States. He was clear what he was arguing: "that the federal government, not Oklahoma, has jurisdiction over major crimes like [his]." Brief for Petitioner at 39, *McGirt v. Oklahoma*, 140 S. Ct. 2452 (No. 18-9526). He argued this was so because "[t]he baseline rule is that the federal government generally has, by statute, exclusive jurisdiction over crimes involving Indians on reservations." *Id.* at 45.

In a five-four decision, the Supreme Court agreed with him. *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) ("*McGirt III*"). After noting that "[a] new trial for his conduct, [McGirt] has contended, must take place in federal court," it ruled "that cases like Mr. McGirt's belong in federal court" because "Congress allowed only the federal government, not the States, to try tribal members for major crimes." *Id.* at 2459, 2480.[3] While the majority opinion focused on a larger jurisdictional question, two dissents highlighted McGirt's underlying conviction. Chief Justice Roberts began his dissent, "In 1997, the State of Oklahoma convicted petitioner Jimcy McGirt of molesting, raping, and forcibly sodomizing a four-year-old girl, his wife's granddaughter. McGirt was sentenced to 1,000 years plus life in prison." *Id.* at 2482 (Roberts, C.J., dissenting). And Justice Thomas concluded his dissent by criticizing the majority for "upsetting a violent sex offender's conviction without the power to do so." *Id.* at 2504 (Thomas, J., dissenting).

---

[3] This Court omits a discussion of the reasoning for this ruling, as that reasoning is not implicated by the current Motion. At present, this Court is primarily concerned with Defendant's representations to the Supreme Court during the appellate process.

None of the opinions—majority or dissent—cast doubt on the evidence of Defendant's guilt. They each focused on the correct forum for adjudicating that guilt: state or federal court. And they each presupposed that a correct forum would be found in one or the other.

**The Federal Trial and Appeal**

Following the Supreme Court's decision, Defendant was federally indicted in August 2020. Dkt. No. 12; Dkt. No. 32. The Government charged him with two counts of aggravated sexual abuse in Indian country (one for digitally penetrating the victim and one for causing intentional contact between his mouth and her vulva) and one count of abusive sexual contact in Indian country (for causing her to touch his genitalia, not through clothing). Dkt. No. 32. In November 2020, McGirt was tried and convicted of all three counts in a three-day trial. Dkt. Nos. 98, 99, 102, 106, 110.

In August 2021, the Court sentenced him to life on each count [Dkt. No. 181 at 2], explaining its sentencing decision in part because:

> The nature and circumstances of these offenses are very serious. Despite having been convicted of sexually abusing two minor boys and being imprisoned for those offenses, less than six years later, after the defendant's release, the defendant repetitively victimized his wife's four-year-old granddaughter, which is the basis for the instant offenses in this matter. The defendant did so by digitally penetrating her vagina, sodomizing her, and having the four-year-old touch his penis, all for his own sexual gratification. The victim viewed the defendant as a grandfather figure. Nevertheless, the defendant violated the victim's trust and the victim's body and abused her over a multiday period. Defendant threatened the victim by telling her that if she disclosed the abuse to her grandmother, her grandmother would be mad at her and that she would go -- and that he would go to jail.
>
> The defendant has imparted unimaginable pain and suffering on the victim. Her family testified at the trial, after the incident, she went from a happy, loving child to a destructive, angry, and defiant child. Over the years, the victim has suffered from intense nightmares and self-harm. The victim has had to seek counseling and cope with the trauma of the event. When she testified in this court years later, as an adult, the pain, hurt, and trauma was still very apparent to this Court.
>
> The Court has specifically considered the defendant's history and characteristics. The defendant exhibits a pattern of perpetrating sexual abuse against minor

> children. In his first convictions for sexual offenses, the defendant sexually abused two small boys, ages five and eight, on two separate occasions. The defendant bribed each of the boys to allow him to sexually abuse them by paying them money. He served approximately two years of his five-year sentence of imprisonment imposed in that matter. The defendant has demonstrated a repetitive sexual predation of young children. His criminal sexual acts progressed from one-time events with young boys, who were residents of an apartment complex where he was employed in maintenance, to repeatedly abusing his wife's young granddaughter who was temporarily staying in the defendant's home and who was under his care. The Court finds by a preponderance of the evidence that the defendant is a child sexual predator with a high risk of recidivism.
>
> Further, as demonstrated by the presentence report and the extensive information defendant requested to be included in the report, defendant has a substantial concern for himself and does not indicate any sense of remorse for his actions or concern for any of his victims whatsoever.

Dkt. No. 195 at 36-38. McGirt appealed his conviction and sentence. Dkt. No. 183.

In June 2023, the Tenth Circuit reversed Defendant's conviction based on a jury instruction issue. *United States v. McGirt*, 71 F.4th 755 (10th Cir. 2023) ("*McGirt IV*"). The appellate court ruled that this Court erred by instructing the jury that it could consider prior inconsistent statements given within sworn testimony only for impeachment rather than for their substance. *Id.* at 758-60.[4] However, while the appellate court remanded the case for a new trial, it noted that,

---

[4] In a parenthetical, the appellate court remarked that this Court "perhaps overlook[ed]" a use note in the Tenth Circuit pattern jury instruction. *Id.* at 759. However, to the contrary, the Court scrutinized this use note during McGirt's trial.

The use note in question begins, "This instruction must be given when a prior inconsistent statement which does not fall within Fed. R. Evid. 801(d)(2)(A) has been admitted." Use Note to Tenth Circuit Pattern Jury Instruction 1.10. One could equivalently say the "instruction must be given when a prior inconsistent statement which is not the statement of a party-opponent has been admitted." Since the issue in McGirt's case was the prior-testimony exception in Rule 801(d)(**1**)(A) and not the party-opponent exception in Rule 801(d)(**2**)(A), the use note directed the Court to give the instruction.

The Court does not contest the Tenth Circuit's holding or its discussion of the substantive use of prior-testimony evidence. However, contrary to the appellate court's parenthetical, the Court *did* review—and follow—the use note. Given the Tenth Circuit's ruling, this Court believes the use note needs revision to accurately reflect Tenth Circuit law.

"[u]nquestionably, there was sufficient evidence to sustain the verdicts" and "the jury could certainly have convicted Mr. McGirt even if the court had permitted it to use the prior testimony for substantive purposes." *Id.* at 761, 771.

### The Federal Case on Remand

After the Tenth Circuit's decision, jurisdiction returned to this Court for McGirt's second federal—and third overall—trial. Dkt. No. 210. The Court originally set trial for September 2023, but after several continuance requests from the parties, put the case on a special setting on December 11, 2023. Dkt. Nos. 211, 228, 232, 236, 238, 246. One week before trial, however, Defendant pled guilty pursuant to a plea agreement. Dkt. No. 267; Dkt. No. 268; Dkt. No. 269.

Defendant's plea agreement was premised on Federal Rule of Criminal Procedure 11(c)(1)(C), which allows parties to "agree that a specific sentence . . . is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." Fed. R. Crim. P. 11(c)(1)(C). "[T]he court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." *Id.* at 11(c)(3)(A). If the Court rejects the agreement, it must:

> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

*Id.* at (c)(5).

Here, the parties agreed that McGirt would plead to one of the three counts—Count Two, for putting his 47-year-old mouth on the four-year-old victim's vulva—and "that 30 years

imprisonment is the appropriate disposition of this case, with the recommendation that the defendant be given credit for all time previously served for these offenses in state and federal custody." Dkt. No. 267 at 1, 8.  Their justification for the stipulated sentence included "the age of the witnesses needed to testify [and] the impact of their testimony on their well-being and their relationship to the parties." *Id.* at 8.

Defendant's change of plea hearing, in standard form for this District, was conducted by a United States Magistrate Judge.  Dkt. No. 265.  The undersigned District Judge has not yet accepted or rejected the plea agreement.  The Court has, however, reviewed the transcript of McGirt's change of plea hearing—including but not limited to the following excerpts where Defendant testified to his guilt under oath:

> THE COURT:  How do you plead, guilty or not guilty to Count 2 of the Superseding Indictment?
>
> THE DEFENDANT:  Guilty.
>
> THE COURT:  Have you told your attorneys all of the facts and circumstances known to you about the charge made against you?
>
> THE DEFENDANT:  And then some [. . .]
>
> THE COURT:  Mr. McGirt, I will ask you one last time, understanding the nature of the charge against you and the effect and the consequence of your plea, how do you plead, guilty or not guilty, to Count 2 of the Superseding Indictment?
>
> THE DEFENDANT:  Under advice and direction of counsel, I plead and -- and knowingly and willingly I plead guilty.
>
> THE COURT:  And are you pleading guilty because you are guilty, Mr. McGirt?
>
> THE DEFENDANT:  Yes [. . .]
>
> THE COURT:  [P]lease tell me what you did, that is how did you commit the acts in connection with Count 2 of the Superseding Indictment? . . .
>
> THE DEFENDANT:  Okay.  I placed my mouth on [B.B.'s] vagina.

Dkt. No. 290 at 13, 24-26.

**Attempts to Challenge Jurisdiction**

After McGirt successfully challenged the Oklahoma state courts' jurisdiction over him, he repeatedly but unsuccessfully attempted to divest the federal courts of jurisdiction too.

In November 2020, after his federal trial but before sentencing, Defendant requested leave to file a pro se motion to dismiss the case for lack of subject matter jurisdiction because federal prosecution "breach[ed] Congress' solemnly guaranteed treaty promises that the Mvskokes would legislate and govern our own people in our own land." Dkt. No. 115 at 1. The Court denied McGirt's request to file his pro se motion because Defendant was represented by counsel. Dkt. No. 121. It directed a copy of the Order denying Defendant's request "be sent to counsel of record so that Defendant and his counsel may confer regarding a possible motion signed by counsel." *Id.* at 1. No motion signed by counsel followed.

During the appeal of his federal conviction, Defendant requested and obtained leave to file a supplemental pro se brief challenging federal jurisdiction before the Tenth Circuit. *McGirt IV*, 71 F.4th at 756-57. He argued that "the statutes under which he was convicted . . . [were] unconstitutional as applied because they [were] not sufficiently related to interstate commerce" and that "the federal courts lack jurisdiction to prosecute [him] because exercise of such jurisdiction violates a series of nineteenth-century treaties between the federal government and the Mvskoke (Muskogee Creek) Nation." *Id.* at 772-73.

The Tenth Circuit considered[5] and rejected both arguments. *Id.* Regarding McGirt's first argument, it explained that "[t]he Supreme Court upheld the constitutionality of the Major Crimes Act in *United States v. Kagama*, based not on enumerated constitutional powers (such as the Indian

---

[5] The Tenth Circuit noted before addressing McGirt's pro se arguments that, "[a]lthough we generally deny motions for leave to file a supplemental pro se brief when the defendant is counseled, we think it prudent to proceed to assure ourselves of our jurisdiction." 71 F.4th at 772.

commerce clause cited by Mr. McGirt), but on a theory of inherent or implied federal power over the tribes." *Id.* at 772 (citing 118 U.S. 375 (1886)). "The Court continues to rely on this inherent power (now commonly called plenary power) in upholding the constitutionality of federal laws—criminal and otherwise—impacting tribes and tribal members." *Id.* Regarding McGirt's second argument, the Tenth Circuit explained that the Supreme Court's decision in his case "both acknowledges that the Major Crimes Act violates promises of tribal self-governance made to the Mvskoke and upholds federal jurisdiction over Mr. McGirt." *Id.* at 773. It quoted the Supreme Court:

> When Congress adopted the [Major Crimes Act], it broke many treaty promises that had once allowed tribes like the Creek to try their own members. But, in return, Congress allowed only the federal government, not the States, to try tribal members for major crimes. All our decision today does is vindicate that replacement promise.

*Id.* (quoting *McGirt III*, 140 S. Ct. at 2480). And it further explained that "Congress wields significant constitutional authority when it comes to tribal relations, possessing even the authority to breach its own promises and treaties, and—as discussed above—to carve out federal criminal jurisdiction over Indians who have committed enumerated crimes in Indian country." *Id.* (citation omitted).

In September 2023, before pleading guilty, Defendant requested a hybrid representation arrangement with his counsel so that he could present "challenges to the court's subject-matter [sic] jurisdiction and constitutionality of this prosecution" on unspecified grounds. Dkt. No. 240 at 2. The Court denied this request because "Defendant [did] not explain why these challenges cannot be made through his attorneys." Dkt. No. 243 at 3. The Court reiterated that counsel could "file motions on [McGirt's] behalf if they are well-grounded in fact and law" but noted "strong reservations about granting Defendant leave to file pro se motions that neither of his two competent attorneys are willing to file." *Id.* Again, no motion signed by counsel followed.

10

In December 2023, Defendant's petition to enter plea of guilty included a statement that, "Mr. McGirt has had other attorneys advise him on jurisdiction. They too are in agreement with this deal." Dkt. No. 269 at 2.

In March 2024, McGirt filed this Motion. While the Court could have again declined to consider it because Defendant is represented, it chose instead to take up the Motion, confirm its jurisdiction, and make a clear record of the case's history.

## AUTHORITY AND ANALYSIS

**Jurisdiction and 25 U.S.C. § 1321**

"Criminal jurisdiction over offenses committed in 'Indian country,' 18 U.S.C. § 1151, is governed by a complex patchwork of federal, state, and tribal law." *United States v. Burch*, 169 F.3d 666, 668 (10th Cir. 1999) (quoting *Negonsott v. Samuels*, 507 U.S. 99, 102 (1993)). McGirt was charged under the Major Crimes Act ("MCA"), 18 U.S.C. § 1153, which "applies to enumerated crimes committed by Indians in 'Indian country.' When [it] applies, jurisdiction is exclusively federal." *Murphy v. Royal*, 875 F.3d 896, 915 (10th Cir. 2017), *aff'd sub nom. Sharp v. Murphy*, 140 S. Ct. 2412 (2020). The MCA states in relevant part:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

18 U.S.C. § 1153(a). Chapter 109A criminalizes various sexual abuse offenses, including those for which McGirt was charged: aggravated sexual abuse in Indian country in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), & 2246(2)(B) and (2)(C); and abusive sexual contact in Indian country in violation of 18 U.S.C. §§ 1151, 1153, 2241(c), 2244(a)(5), & 2246(3). Dkt. No. 32.

11

The significance of the MCA is clear: an Indian who commits a chapter 109A offense in Indian country *shall be subject to federal criminal jurisdiction.* This is an unambiguous statutory assignment of authority. The Supreme Court recognized it: "cases like Mr. McGirt's belong in federal court." 140 S. Ct. at 2480. The Tenth Circuit recognized it: the "Supreme Court's decision . . . upholds federal jurisdiction over Mr. McGirt." *McGirt IV,* 71 F.4th at 773 (citing *McGirt III*, 140 S. Ct. at 2480). But McGirt refuses to recognize it.

Instead, McGirt claims, Congress repealed the MCA in 2010. Dkt. No. 286. His argument focuses on 25 U.S.C. § 1321(a)(2), which currently reads in relevant part:

> At the request of an Indian tribe, and after consultation with and consent by the Attorney General, the United States shall accept concurrent jurisdiction to prosecute violations of sections 1152 and 1153 of Title 18 within the Indian country of the Indian tribe.

25 U.S.C. § 1321(a)(2).

This subsection was added to § 1321 in 2010. McGirt argues that "the amendment made it mandatory for a Tribal REQUEST (emphasis [his]) and the Tribe must grant concurrent jurisdiction before the federal government could 'prosecute violations of sections 1152 and 1153 of Title 18 United States Code within the Indian Country of the affected tribe.'" Dkt. No. 286 at 2 (quoting 25 U.S.C. § 1321(a)(2)). He further claims that "[s]ince the 2010 amendment, the Muskokes [sic] never requested federal prosecution of violations of the MCA crimes, nor have they ever granted concurrent jurisdiction for federal prosecution of those crimes." *Id.* at 3. Therefore, according to McGirt, his "2020 federal arrest, trial, 2021 appeal, and 2023 new trial [sic] all fall into the 2010 prohibition of federal prosecution, without Tribal consent and Tribal grant of concurrent [jurisdiction], was [sic] without jurisdiction." *Id.* at 5.

McGirt's claim is no small thing. "Beginning with the Seven Major Crimes Act of 1885, Congress has removed major criminal jurisdiction from all Indian tribes." *McGirt IV*, 71 F.4th at

773 (quoting *Lazore v. Comm'r*, 11 F.3d 1180, 1183 (3d Cir. 1993)).  He asks this Court to hold that Congress reversed course on almost 150 years of action by revoking the federal government's prosecutorial authority over tribal members.  And he asks the Court to hold that Congress did this without announcing its intention or explicitly stating that it was repealing the MCA, but instead by adding a nested subsection to a statute housed in a separate title of the United States Code seven titles away from where the MCA resides.  *Compare* 18 U.S.C. § 1153 *with* 25 U.S.C. § 1321.

Implicit repeal is a high threshold.  "While a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . . repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (quotations omitted). Courts "will not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Id.* (quotations omitted).[6]  The question, then, is whether McGirt's construction is absolutely necessary in order that the words of the 2010 amendment to § 1321 have any meaning at all.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Builders*, 551 U.S. at 666 (quotation omitted).  Further, it is the Court's "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotation omitted).

---

[6] This is not a new rule.  *See, e.g., Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."); *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) ("[T]he intention of the legislature to repeal must be clear and manifest.").

13

Section 1321 is titled "Assumption by State of criminal jurisdiction." Its first subsection, titled "Consent of United States," reads in relevant part:[7]

> **(1) In general**
>
> The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
>
> **(2) Concurrent jurisdiction**
>
> At the request of an Indian tribe, and after consultation with and consent by the Attorney General, the United States shall accept concurrent jurisdiction to prosecute violations of sections 1152 and 1153 of Title 18 within the Indian country of the Indian tribe.

25 U.S.C. § 1321(a).

Reading the second subsection—where McGirt focuses—in concert with the first subsection gives necessary context to the statute's overall meaning. Section 1321 was originally enacted in 1968 to "requir[e] tribal consent to states' assuming optional jurisdiction" over criminal cases. *United States v. Hoodie*, 588 F.2d 292, 294 (9th Cir. 1978). Citing § 1321, the Tenth Circuit explained in 1992 that "the United States has consented to States assuming criminal jurisdiction in Indian country, provided that the Tribe consents" and a state takes "the affirmative steps necessary for such an assumption of jurisdiction." *United States v. Sands*, 968 F.2d 1058, 1062 (10th Cir. 1992). More recently, the Supreme Court explained that § 1321 allows "States [to] opt

---

[7] Although § 1321 has a second subsection, subsection (b) is not implicated here, as it relates to property, hunting, trapping, and fishing.

14

in, with tribal consent," to "prosecute state-law offenses committed by or against Indians in Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 647 (2022).

Interpretation of the 2010 amendment adding subsection (2) appears to be a question of first impression. However, with the background of § 1321's overall purpose, there is a readily apparent interpretation of § 1321(a)(2): once a state has opted in and a tribe has given its consent to state prosecution of crimes in Indian country, the tribe may request that the federal government accept concurrent jurisdiction *with the state* to prosecute MCA crimes (among others), and the federal government has no discretion to decline such concurrent jurisdiction.

In contrast to McGirt's reading of § 1321(a)(2) in a vacuum, which narrows the federal government's prosecutorial power, a reading of § 1321(a)(2) in the context of the overall statute actually *widens* it.[8] Under this reading, the words of the 2010 amendment are given meaning without any hint of implied repeal of the MCA. Concurrent jurisdiction in state and federal courts to prosecute MCA crimes under 25 U.S.C § 1321(a)(2) did not implicitly repeal the MCA and does not divest the federal government of its broader MCA jurisdiction under 18 U.S.C. § 1153.

**Representations to the Court and Rule 11**

Before the Supreme Court's 2020 decision in his favor, McGirt repeatedly and unequivocally advocated that his criminal case belonged in federal court. In his opening brief to the Supreme Court, he claimed "the federal government, not Oklahoma, has jurisdiction over major crimes like [his]." Brief for Petitioner at 39, *McGirt v. Oklahoma*, 140 S. Ct. 2452 (No. 18-

---

[8] The Court does not believe the two subsections of § 1321(a) to be ambiguous; however, if they were, the title of the statute—Assumption by State of criminal jurisdiction—adds support to the Court's reading. *See So. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1150 (10th Cir. 2021) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." (quoting *I.N.S. v. Nat'l Ctr. For Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991))).

9526). He argued this was so because "[t]he baseline rule is that the federal government generally has, by statute, exclusive jurisdiction over crimes involving Indians on reservations." *Id.* at 45.

At oral argument, McGirt's counsel continued this theme: Oklahoma didn't have jurisdiction over him but the federal government did. His counsel stated, "the Major Crimes Act established exclusive federal jurisdiction over enumerated crimes in 'any state of the United States.'" Transcript of Oral Argument at 5, *McGirt v. Oklahoma*, 140 S. Ct. 2452 (No. 18-9526). In fact, Justice Ginsburg asked McGirt's counsel a question similar to the one presented here:

> JUSTICE GINSBURG: Counsel, you don't claim immunity from prosecution for a major crime. I think your position is that the federal prosecutor could have charged your client?
>
> MR. GERSHENGORN: That's absolutely correct, Your Honor.

*Id.* at 10-11. *See also id.* at 12 (reiterating "we are not claiming an immunity, as Your Honor pointed out, and, indeed, ***there would be a retrial in federal court***" if the Court were to rule in McGirt's favor (emphasis added)).

Emboldened by his success challenging jurisdiction and getting *to* federal court, McGirt continued challenging jurisdiction to try to get *out* of federal court. This Court rejected those arguments and so did the Tenth Circuit. McGirt's counsel declined to advocate for them. But McGirt continues to urge them.[9]

---

[9] McGirt's change in position following his success convincing a tribunal to rule in his favor evokes the potential of judicial estoppel, which is an equitable doctrine "designed 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1239 (10th Cir. 2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). However, in the Tenth Circuit, judicial estoppel is currently only available for changes in factual position, not legal position. *Id.* at 1240 n.9 (explaining that other circuits have extended judicial estoppel to legal positions but noting that preexisting Tenth Circuit law foreclosed the panel from doing so); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1070-71 (10th Cir. 2019) (quoting and declining to revisit *BancInsure* that "judicial estoppel only applies when the position to be estopped is one of

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, an individual's "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994). In particular, McGirt's pro se activities are subject to Federal Rule of Civil Procedure 11:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).[10] Rule 11 was established because "[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Collins v. Daniels*, 916 F.3d 1302, 1323 (10th Cir. 2019) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384. 398 (1990)).

---

fact, not one of law"). McGirt's change in position is a legal one. Thus, under current Tenth Circuit precedent, judicial estoppel cannot apply.

[10] Although this rule is found in the Federal Rules of Civil Procedure and McGirt's case is a criminal proceeding, the Court may look to Rule 11 because the Federal Rules of Criminal Procedure do not provide an equivalent. *Cf. United States v. Garcia*, 936 F.3d 1128, 1132 n.1 (10th Cir. 2019) (looking to Federal Rules of Civil Procedure where Federal Rules of Criminal Procedure were silent). *See also United States v. Wilfong*, 799 F. App'x 650, 652 (10th Cir. 2020) (referencing Fed. R. Civ. P. 11 as a potential source of sanctions in a criminal case); *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999) (discussing Rule 11 sanctions in the context of a criminal case). *But see United States v. Aleo*, 681 F.3d 290, 308 (6th Cir. 2012) (Sutton, J., concurring) ("Surely the decision not to import Civil Rule 11 into the Criminal Rules, to take one example, was an intentional and sensible one.").

Rule 11 grants district courts the power to sanction any party for violation of its requirements. Fed. R. Civ. P. 11(c). This is a two-step process: the Court must first find that a filing violates Rule 11, then must consider imposition of an appropriate sanction. *Collins*, 916 F.3d at 1319. A "district court has broad discretion to impose Rule 11 sanctions." *Cooter & Gell*, 496 U.S. at 407. These "sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990).

At step one, the Court finds McGirt's behavior violates Rule 11 and is sanctionable. First, McGirt's recent behavior illustrates what the Court noted during sentencing in 2021: McGirt "has a substantial concern for himself and does not indicate any sense of remorse for his actions or concern for any of his victims whatsoever." Dkt. No. 195 at 38. In state court, after hearing the heinousness of Defendant's actions, a jury recommended *500 years per count*. In federal court, even when reversing Defendant's conviction, the Tenth Circuit noted that "unquestionably" the Government's evidence was sufficient for conviction. In McGirt's own words, he knows how to plead guilty when he's guilty, and he has pled guilty in this Court.

In his dissent from the Supreme Court's ruling in *McGirt III*, Chief Justice Roberts cautioned that, "[a]lthough the federal government may be able to reprosecute some [] crimes, it may lack the resources to reprosecute all of them, and the odds of convicting again are hampered by the passage of time, stale evidence, fading memories, and dead witnesses." 140 S. Ct. at 2501. His prediction was borne out by *McGirt IV*, where the Tenth Circuit described various weaknesses in the Government's federal case related to the fact that the case "rested almost entirely upon testimony . . . that suffered from faded memories and internal inconsistencies." 71 F.4th at 768.

18

The plea agreement notes that McGirt's plea of guilty to only one of the three charges against him came about partly because of "the age of the witnesses needed to testify [and] the impact of their testimony on their well-being and their relationship to the parties." Dkt. No. 267 at 8.

McGirt's repeated challenges to the jurisdiction he himself requested violate Rule 11(b)(1) because they have caused unnecessary delay for the parties, needless expense to the Government and the Court, and harassing emotional turmoil for the victim (who has already spent almost her entire life coping with the effects of Defendant's actions and who now is subjected to hearing his name on a regular basis because of the scope of Supreme Court's ruling). The Court does not begrudge McGirt's proper recourse of appealing his conviction. However, after his federal conviction was reversed for an instructional error, McGirt chose to plead guilty and admit under oath that he behaved criminally in exchange for a favorable plea deal. Before the Court had occasion to review and accept or reject the plea agreement, McGirt prolonged his own case (which he had previously requested be expedited [Dkt. No. 273]) and attempted to shirk responsibility for his *admitted* action.

McGirt also flouts Rule 11(b)(2) with a jurisdictional motion that strains the boundaries of nonfrivolousness. While McGirt brings a question of first impression before the Court, that does not mean the question is one of merit. Indeed, he brings that question in defiance of various warnings and consultations. Defendant's petition to enter plea of guilty indicates he consulted with *multiple* attorneys on jurisdiction and these attorneys did not share McGirt's interpretation of the law. His counsel has repeatedly chosen not to file jurisdictional motions on his behalf.[11] And

---

[11] McGirt repeatedly sought leave to file his jurisdictional motions pro se and the Court repeatedly denied those requests because he was represented. When the Court issued those denials, it noted that McGirt and his counsel could confer on a potential motion signed by counsel. No signed motions followed. The Court surmises this was because his counsel was aware of their obligations under Rule 11.

the Court has previously warned that it had "strong reservations about granting Defendant leave to file pro se motions that neither of his two competent attorneys are willing to file." Dkt. No. 243 at 3.

At step two, although the Court finds that McGirt's conduct is sanctionable, it does not currently impose sanctions against him.[12] First, McGirt would need to be given notice and an opportunity to respond and show cause why his conduct has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(1), (c)(3). But more importantly, Rule 11 sanctions are intended to "deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* at 11(c)(4). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of the federal courts." *Collins*, 916 F.3d at 1322 (quoting *Cooter & Gell*, 496 U.S. at 393). Having assured itself of its jurisdiction, the Court will promptly set McGirt for sentencing. Additional baseless filings are thus unlikely. Since the purpose of Rule 11 sanctions would not be served by imposing them here, the Court exercises its discretion to refrain from sanctioning McGirt despite his abusive litigation tactics.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion [Dkt. No. 286] is DENIED.

Dated this 27th day of March 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[12] "[S]anctions under Rule 11 are discretionary; not mandatory." *Lundahl v. Home Depot, Inc.*, 594 F. App'x 453, 456 (10th Cir. 2014) (unpublished) (first citing 5A C. Wright & A. Miller, *Federal Practice and Procedure (3d ed.)*, § 1331 at 476 (explaining that under the 1993 amendments to Rule 11, "[t]he district court now has discretion in determining whether or not to apply sanctions for a Rule 11 violation and no longer is mandated to do so as was true under the 1983 amendment"); and then citing *Brown v. Eppler*, 725 F.3d 1221, 1228 & nn. 2 & 3 (10th Cir. 2013) (rejecting as meritless the argument that "[a] trial court abuses its discretion when it refuses to impose sanctions ... for a clear violation of Rule 11")).