**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**


UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
                    vs             ) No. 20-CR-50-JFH
                                   )
JIMCY MCGIRT,                      )
                                   )
                    Defendant.     )
                                   )


SENTENCING
BEFORE THE HONORABLE JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE
MAY 2, 2024


Shelley Ottwell, RPR, CSR
United States Stenographer
P.O. Box 607
Muskogee, Oklahoma 74402

**A P P E A R A N C E S**

ON BEHALF OF THE GOVERNMENT
Sara McAmis, Esq.
United States Attorney's Office
520 Denison Ave.
Muskogee, Oklahoma 74401


Kyra Jenner, Esq.
United States Attorney's Office
520 Denison Ave.
Muskogee, Oklahoma 74401


ON BEHALF OF THE DEFENDANT
Richard O'Carroll, Esq.
Attorney at Law
2171 N. Vancouver Ave.
Tulsa, Oklahoma 74127


Rex Earl Starr, Esq.
Attorney at Law
108 N. 1st Street
Sallisaw, Oklahoma 74960

**P R O C E E D I N G S**

(ON THE RECORD AT 10:04 a.m.)

COURTROOM DEPUTY:  The Court will now call Case 20-CR-050-JFH, United States of America v Jimcy McGirt.

If counsel would please make your appearances for the record.

MS. MCAMIS:  Good morning, Your Honor.  The United States appears by Sara McAmis and Kyra Jenner.

MS. JENNER:  Good morning, Your Honor.

THE COURT:  Good morning, Counsel.

MR. O'CARROLL:  Good morning.  Richard O'Carroll for Mr. McGirt with Rex Earl Starr.

THE COURT:  Good morning.

MR. STARR:  Good morning, Your Honor.

THE COURT:  This case comes on for sentencing today.

I note that the defendant previously entered a plea of guilty to Count Two of the superseding indictment before the United States magistrate judge.  The defendant both orally consented and signed a written consent to proceed before the magistrate judge.

This Court finds the plea was voluntary and supported by the factual record.  Therefore, the Court affirms the finding of guilt and accepts defendant's guilty plea before the magistrate judge.

Counsel, was the victim of the matter notified of the hearing and given the opportunity to attend?

MS. MCAMIS:  Yes, Your Honor.  She is here and at the appropriate time she does wish to address the Court.

THE COURT:  All right.  I'll provide an opportunity for her to make a statement in just a moment.

I understood there are no objections to the presentence report.  Is that correct from the government's perspective?

MS. MCAMIS:  Yes, Your Honor.

THE COURT:  Mr. O'Carroll, is that correct from your client's perspective?

MR. O'CARROLL:  It is Your Honor.

THE COURT:  There being no objections, the Court adopts the presentence report and it will form the factual basis for the Court's sentence today.  I must make an accurate determination of the applicable sentencing range under the United States Sentencing Guidelines.

Defendant's acceptance of responsibility has been taken into account in the calculation of the advisory guideline range.  In this case based upon the offense to which defendant pled guilty, the specific offense characteristics and an adjustment for acceptance of responsibility, defendant's total offense level is 31.

His Criminal History Category is 2.

Under the applicable guideline provisions, the sentencing range for imprisonment is 121 to 151 months. The sentencing range for supervised release is three to five years, and the defendant is not eligible for probation.

The Court may also impose a fine between $15,000 and $150,000.  Restitution is mandatory but has not been ascertainable by this court as it is my understanding no restitution request has been made.

Is that your understanding, Counsel?

MS. MCAMIS:  That is correct, Your Honor.

THE COURT:  The party's agreed-upon sentence as set out in the plea agreement is outside the applicable sentencing guideline range.

However, under the US Sentencing Guideline Section 5K2.0 comment note five, and Section 6B1.2(c) where a plea agreement includes a specific sentence pursuant to Federal Rule of Criminal Procedure Rule 11(c)1(C), the court may accept the agreement if the court is satisfied that the agreed-upon sentence is outside the applicable guideline range for justifiable reasons and those reasons are set forth with specificity.

I am familiar with the sentencing memorandum filed by the government as well as on behalf of the defendant.

Would either party like to be heard further about the plea agreement, and specifically as to the issue of whether the Court should accept the plea agreement?

Mr. O'Carroll.

MR. O'CARROLL:  No, Your Honor.

THE COURT:  Does Mr. McGirt wish to make any statements?

MR. O'CARROLL:  No, Your Honor.

THE COURT:  All right.

Ms. McAmis, do you wish to make any statement as to whether the Court should accept the plea agreement?

MS. MCAMIS:  If it would please the court, Your Honor.

THE COURT:  Yes.

MS. MCAMIS:  May I go to the podium?

THE COURT:  Yes, you may.

MS. MCAMIS:  Your Honor, I know that you have had the opportunity to read the sentencing memorandums offered by both parties.  In addition to that, with respect to the Court's inquiry, in August of this year it will have been 28 years since this defendant sexually abused his victim, who is here today, B.C..  That happened in 1996.  And she did exactly what she was expected to do and was asked to do with tremendous courage.  She took the stand not once but twice.  In 1997, as a small child in

state court testified, and this defendant was convicted. And B.C. started the process at that point of moving forward with her childhood and moving forward with her life. After the state appellate process, it was done. It was over. She was not going to have to reopen this chapter of her life.

I then will never forget the conversation I had to have with her in 2020. B.C. was 28 years old at the time, and through absolutely no fault of her own or through absolutely no comment on her victimization in this case, but purely on a jurisdictional issue it all came -- opened back up again.

I half expected during that first conversation with B.C. for her to say, lose my number. I'm not going through this again. But instead, B.C. faced the situation with a tremendous amount of courage and intentional fortitude, and she was ready, willing, and able to face all of this again at a time in her young life that was very consequential for her, and she agreed to come and testify again.

It caused her so much anxiety. It uprooted her life in a way that I don't think most of us could even begin to understand. She came. She took the stand. She was cross-examined. She was called a liar. Her motives were questioned, but yet she persevered and was able to summon

the strength to do it.  And finally, again, in November of 2020, it was over for her because the jury convicted the defendant, and she was able to find relief in that, and again start to pick up the pieces of her life.

Unfortunately, I then had to have another conversation with B.C. in June of 2023.  And, again, I had to tell her, I am so sorry, but this is not over.  Yet again, we have to face it.

Today as we sit here, B.C. is -- she deserves finality, Your Honor.  For all of these years of her life, the defendant, through this court process, has denied his guilt.  And, therefore, called her a liar and called her motives into question.  But through this plea agreement this defendant has finally admitted, confessed, affirmed that she has been telling the truth for all of these years, and she deserved to hear that.  She deserved to hear him admit his guilt.

She also deserves to know that this process is over, and that I will not have to come back to her in another year or in another two years again asking for her to uproot her life.

She can now finally close this chapter and move forward.

The benefit is not simply to B.C.  The finality of this plea agreement also serves the interest of the United

States.  It outweighs the risk of continued litigation in this case, and it has an impact on conserving judicial resources and the resources of the United States Attorney's Office.  But the most important and specific goal of this plea agreement was to give B.C. the peace of mind of finality.  As I stated earlier, at an appropriate time, she does wish to address the Court.

But the United States is here respectfully requesting that Your Honor accept the plea agreement.

THE COURT:  All right.  Thank you, Ms. McAmis.

We can have the victim come forward, and she can make her statement now.

All right.  Come forward, ma'am.

All right.  Ma'am, good morning.  And just tell us your name for the record, and then you can begin and take as much time as you need, all right?

THE WITNESS:  My name is B.C.  I'm going to read something I wrote on the way in here.

The defendant Jimcy McGirt severely impacted my childhood, and I didn't realize until the past few years how I carried that into adulthood.  I struggled a lot as a child.  I never properly healed from the trauma that he caused me.

He took my innocence and stole my childhood from me. I have learned that the reason I can't remember most of my

younger years is because my brain was trying to protect me from the bad memories.

I had a hard time -- I had a hard time making it through school.  And once I graduated, I found alcohol as an escape from feelings I couldn't explain.

At 18, I attempted to kill myself.  I continued to drink pretty heavily throughout my 20s.

When this all came back and I had to relive and face the trauma, it paralyzed me.  Every day was painful, and I didn't want to be alive.  I couldn't hold a job because my mental health was so unstable, but with the support of my partner, my friends, my family, and my legal team, the people beside me, and also the people that aren't here today, I'm still here and I'm okay.

I found healthy outlets instead of drowning myself in alcohol.  I started creating art that I am proud to say people are displaying in their homes.  Art has really helped me get through the tough days.  I am grateful for everyone who has stood beside me, supported, and fought for me.  Despite the turmoil Jimcy put me through, I can confidently say I am doing good right now.

I've worked really hard on my mental health with therapy and medication.  Growing and healing through this has inspired me to get into the mental health field.

I'm currently an office specialist at a facility and

I hope to one day be able to do more to help others through their struggles.  Whatever happens today, I'll be okay.  It's time to let go of the hurt.  I deserve peace and will continue to fight to maintain that.

THE COURT:  B.C., thank you for your statement.

Do you have anything to add, Ms. McAmis?

MS. MCAMIS:  No, Your Honor.

THE COURT:  Based upon the information provided by the parties, and especially based upon the statement provided by B.C., and her desire to move past this, she has shown tremendous bravery and courage and based upon, in large part, her wishes, as presented by the government, the Court finds the sentence and final disposition agreed to pursuant to Rule 11(c)1(C) is outside the applicable guideline range for justifiable reasons, does not undermine the statutory purposes of sentencing and reflects the seriousness of the offense.

Therefore, the Court accepts the plea agreement and will it depart upward pursuant to U.S.C Sentencing Guidelines Section 5K2.OD4, comment note 5 in Sections 6B1.2C.

Do you have any further comments regarding sentencing, Ms. McAmis?

MS. MCAMIS:  No, Your Honor.

THE COURT:  Mr. O'Carroll, do you have any

further statements that you wish to make regarding sentencing?

MR. O'CARROLL:  No, Your Honor.

THE COURT:  Does the defendant wish to make any final statements?

MR. O'CARROLL:  No, sir.

THE COURT:  I do recognize that the United States Sentencing Guidelines are advisory and not mandatory.  But nonetheless, I have considered the guidelines along with all factors set forth in Title 18 U.S.C. Section 3553(a) to reach what I believe is an appropriate and reasonable sentence as agreed upon by the parties and supported by the victim in this case.

In determining a sentence, I've considered the nature and circumstances of the offense, defendant's personal characteristics, his criminal history, I've considered the advisory guideline calculations, I've considered sentencing disparities among defendants.  This case involved the defendant sexually abusing his four-year-old granddaughter in 1996, while she was under his care.

I'm not going into the further details of that because the record is adequately and clearly set forth by what happened as represented by two previous trials and substantial evidence.

Based upon these factors, a sentence outside the

advisory guideline range for justifiable reasons is reasonable and sufficient, but not greater than necessary to meet the requirements and objectives set forth in Title 18, U.S.C., Section 3553(a).  This sentence reflects the seriousness of the offense, will serve as an adequate deterrent to this defendant, promote respect for the law, provide punishment for the offense, and provide protection for the public from further crimes by this defendant, as well as provide correctional treatment for the defendant in the most effective manner.

A term of supervised release with appropriate special conditions based upon these factors will allow the defendant the opportunity to reintegrate into the community upon release from imprisonment, be monitored for future law violations, and receive any needed mental health treatment.

Restitution is mandatory but has not been ascertainable by this Court, as no restitution request has been made.

Mr. McGirt, will you approach the podium up here with your counsel, sir?

Mr. McGirt, you appear before the Court today for the purpose of sentencing, having previously pled guilty to the Count Two of the indictment.  In accordance with applicable law, it is the order and judgment of this Court

that you, Jimcy McGirt, are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 360 months.

Upon release from imprisonment, you shall be placed on a term of supervised release for a term of five years. Should the term of supervised release be revoked, an additional term of imprisonment of up to five years could be imposed at revocation.

Immediately upon release from custody but no later than 72 hours, you must report in person to the probation office in the district where you are authorized to reside.

While on supervised release, you must not commit another federal, state, or local federal crime.

You must not own, possess or have access to a firearm, ammunition, destructive device, or any other dangerous weapon.

You must at the direction of the United States Probation Office, cooperate with and submit to the collection of a DNA sample for submission to the Combined DNA Index System.  You must not possess a controlled substance, and you must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of your release from custody and thereafter you shall submit to at least two additional periodic drug tests not to exceed eight tests per month.

You shall comply with the standard conditions that have been adopted by this Court and/or as set out in the judgment because they establish the basic expectation for your behavior while on supervised release and they identify the minimum tools needed by the probation office to keep informed, report to the Court, and bring about improvement in your conduct and condition.

Based upon the factors outlined earlier, you shall also comply with the following additional special conditions of supervised release:  Conditions 1, 2, 6, 7, and 9 of the sex offender conditions.  The search seizure and condition.

You are also hereby prohibited from attempting to or having any contact whatsoever with the victim in this case, B.C., and that is either directly or indirectly, in person, through others, by telephone, mail, electronic means, or in any other manner at any time or place unless specifically authorized by this court.

You shall remain 100 yards away from her, her place of residence, her place of employment, or school at all times.

Now based upon your financial profile as outlined in the PSR report, the Court finds that you do not have the ability to pay a fine due to being indigent.  Therefore, the Court does not impose a fine or the special monetary

assessment under Title 18 U.S.C., section 3014 or 2259(a).

You shall, however, pay a mandatory special monetary assessment of $100.  This assessment is to be paid immediately to the United States Court Clerk for the Eastern District of Oklahoma.

This case is really about a tale of two cities.  We have a victim in this case that's shown tremendous courage, and she did a lot of things in most part.  I remember her saying previously because she wanted to do this for every other person that's been hurt by Mr. McGirt.  So we have one person who's not thought about herself but who's thought about others.  And on the other hand of the equation, we've got Mr. McGirt, who's done nothing but think about himself the whole time.

Every time I've heard Mr. McGirt speak, I've heard him talk about himself and how he's got concern for himself, and not one time still have I ever heard him express any concern about a victim in the case.

Mr. McGirt, I have a duty to advise you that, subject to any waiver appellate post-conviction rights that may be contained in your plea agreement, you may have a right to appeal the sentence that has been imposed.  Any such appeal must be filed within 14 days, the date the judgment is entered.

If you wish to appeal and cannot afford an appeal,

there are forms in the clerk's office to request to appeal without prepayment of costs.

Mr. O'Carroll and Mr. Starr will remain your counsel during this 14-day time of appeal.

Let me just say, B.C., you have shown tremendous courage and bravery.  You are learning about a strength that you never knew you had, and I'm so proud of what you've been able to overcome after all these years.  You're going to be just fine, like you said.  And I'm looking forward to hearing all the great things you do ahead.

Anything further on behalf of the defendant, Mr. O'Carroll?

MR. O'CARROLL:  No, sir.

THE COURT:  Anything further on behalf of the government?

MS. MCAMIS:  Simply that if a transcript is ever made for whatever reason of these proceedings, we would ask that the victim's name be redacted and replaced with initials in an attempt to protect her privacy.

THE COURT:  That will be the Court's order.  If any order of the transcript is made, the victim's initials will be substituted for her name.

And I have submitted to me, a notice of dismissal by the government and this is a Motion to Dismiss Counts 1

and 3 of the superseding indictment.  And I suppose you're also moving to dismiss the original indictment?

MS. MCAMIS:  Yes, Your Honor.

THE COURT:  All right.  That will be granted.

All right.  Anything further on behalf of the government?

MS. MCAMIS:  No, Your Honor.

THE COURT:  All right.  Defendant is remanded to the custody of the United States Marshal Service.  Court will be in a short recess.

(PROCEEDINGS CONCLUDED AT 10:25 a.m.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    June 6, 2025

/S/ Shelley Ottwell, RPR
Shelley Ottwell, RPR, CSR
U.S. STENOGRAPHER